## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ROSEMARY MALTBIA, individually and as Special Administrator of the Estate of IDA ROSE DOCKERY,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 20-2607-DDC-KGG** |
| **BIG BLUE HEALTHCARE, INC, d/b/a RIVERBEND POST-ACUTE REHABILITATION and RYAN LEIKER,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiff's Motion to Remand (Doc. 12). Plaintiff argues that her state law claims relying on Kansas law belong in state court. Defendants argue that a federal law—the Public Readiness and Emergency Preparedness Act (PREP Act)—*completely preempts* plaintiff's claims, and thus provides this court with federal question jurisdiction over them. For reasons explained below, the court rejects defendants' argument and concludes it lacks subject matter jurisdiction over the action. It thus remands the case to state court.

### I.      Background

Ida Rose Dockery lived in Riverbend Post-Acute Rehabilitation ("Riverbend"), a skilled nursing facility, in Wyandotte County, Kansas. Doc. 1-1 at 2 (Pet. ¶¶ 1–2, 6). Ms. Dockery lived at Riverbend because she was in a "defenseless and dependent condition" and relied on defendants "for her safety, care and protection." *Id.* at 3 (Pet. ¶ 15).

Plaintiff alleges that "Riverbend knew, or should have known, the importance of ensuring COVID-19 did not enter or spread in its facility and should have monitored residents, employees and visitors of the facility for fever, cough and other known symptoms of COVID-19 and practiced social distancing." *Id.* at 2 (Pet. ¶ 8). She asserts that "a Riverbend staff member began exhibiting signs and symptoms of COVID-19 infection" between March 24, 2020 and March 27, 2020. *Id.* at 3 (Pet. ¶ 9). She also asserts that this symptomatic staff member "who had a cough and/or fever, was allowed to enter Riverbend without appropriate screening and was allowed to work in the facility without utilizing appropriate infection control measures[.]" *Id.* at 3 (Pet. ¶ 10). The staff member tested positive for COVID-19 on March 30, 2020. *Id.* (Pet. ¶ 11). Riverbend reported its first positive COVID-19 case on April 1, 2020. *Id.* (Pet. ¶ 12). By April 3, 2020, at least seventeen residents and two staff members tested positive for COVID-19. *Id.* (Pet. ¶ 13). On April 18, 2020, Ms. Dockery died from COVID-19 complications. *Id.* (Pet. ¶ 14).

On October 30, 2020, Rosemary Maltbia—daughter of Ms. Dockery—filed suit in the District Court of Wyandotte County, Kansas bringing state law claims against Big Blue Healthcare, Inc and Ryan Leiker. Doc. 1-1 at 1; *see also id.* at 2 (Pet. ¶¶ 1–3). Plaintiff sued defendants for (1) negligence/survival and (2) wrongful death. *Id.* at 4–5. She alleges defendants breached their duty to Ms. Dockery by:

- "[F]ailing to consistently and adequately supervise, monitor and/or treat Ida Rose Dockery;"

- "[F]ailing to hire, train and supervise appropriate, qualified personnel to monitor, supervise and/or treat Ida Rose Dockery;"

- "[F]ailing to be adequately staffed to appropriately care and treat Ida Rose Dockery;"

- "[F]ailing to take appropriate measures to prevent injury to Ida Rose Dockery;"

- "[F]ailing to adequately assess the care needs of Ida Rose Dockery;"

- "[F]ailing to adequately implement appropriate interventions to address the care needs of Ida Rose Dockery;"

- "[F]ailing to have appropriate policies and procedures in place and for failing to follow appropriate policies and procedures;"

- "[F]ailing to implement measures and interventions to reduce the risk of infection and injuries to Ida Rose Dockery and/or failing to properly comply with interventions put in place to reduce the risk of infection and injury;"

- "[F]ailing to provide Ida Rose Dockery a safe environment;"

- "[F]ailing to implement and/or follow proper infection control protocols and measures;"

- "[F]ailing to prevent staff from working when said staff exhibited signs and symptoms of COVID-19 infection;"

- "[F]ailing to provide proper personal protective equipment to staff at the facility;"

- "[F]ailing to separate and/or quarantine and/or isolate persons with signs and symptoms of COVID-19;"

- "[F]ailing to adhere to social distancing guidelines;"

- "[F]ailing to otherwise care for and treat Ida Rose Dockery consistent with the standard of care, which upon information and belief, will be disclosed through discovery in the course of this litigation."

*Id.* at 3–4 (Pet. ¶ 17(a)–(o)).

On December 4, 2020, defendant Big Blue Healthcare, Inc. filed a Notice of Removal (Doc. 1).[1]  Plaintiff filed a Motion to Remand (Doc. 12) and a corresponding Memorandum in Support (Doc. 13).  Defendants filed a joint Response (Doc. 17)[2]  and plaintiff filed a Reply

---

[1]     Defendant Big Blue Healthcare, Inc. also filed a Motion to Dismiss (Doc. 7) and a Counterclaim (Doc. 6) for declaratory relief.  Plaintiff requested an unopposed extension of time (Doc. 14) to answer the Counterclaim (Doc. 6) and respond to the Motion to Dismiss (Doc. 7) until the court decided the Motion to Remand (Doc. 12).

[2]     Defendants request a jurisdictional hearing in their Response.  Doc. 17 at 1.  D. Kan. Rule 7.2 provides:  "The court may set any motion for oral argument or hearing at the request of a party or on its

(Doc. 18).  Defendants also submitted three additional filings identifying supplemental authority.

Docs.  19, 20, 21.  The court has reviewed all filings.  *See* D. Kan. Rule 7.1(f).

## II.      Legal Standard

"Federal courts are courts of limited jurisdiction.  They possess only that power

authorized by Constitution and statute[.]"  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

375, 377 (1994).  Congress has empowered federal courts to hear certain cases removed from

state court.  Defendants may remove any state-court, civil action to federal court if the federal

court has original jurisdiction over at least one of the plaintiff's claims.  28 U.S.C. § 1441(a); 28

U.S.C. § 1367.  But, the court must remand the case to state court if the federal court lacks

subject matter jurisdiction over the action.  28 U.S.C. § 1447(c).  The "removing party has the

burden to demonstrate the appropriateness of removal from state to federal court."  *Baby C v.

Price*, 138 F. App'x 81, 83 (10th Cir. 2005).  "Thus, doubtful cases must be resolved in favor of

remand."  *Id.*

## III.     Discussion

This case, in a nutshell, requires the court to decide whether plaintiff's claims arise under

federal law for purposes of federal question jurisdiction.  This question requires the court to

consider the doctrine of "complete preemption" and thus determine whether plaintiff's state

court allegations fall within the scope of a federal remedial right.

In this case, the relevant remedial right comes from the PREP Act, 42 U.S.C. §§ 247d—

d-10.  And the scope of that remedial right depends on a few words in the statute, *i.e.*:  "injuries

directly caused by the administration or use of a covered countermeasure[.]"  42 U.S.C. § 247d-

---

own initiative."  After reviewing the parties' written submissions, the court construes defendants' request
as a request for oral argument and finds that the written submissions explain the parties' positions quite
effectively.  The court concludes that oral argument will not assist its work and thus, to grant it, would
contradict Fed. R. Civ. P. 1.  Exercising its discretion, the court denies defendants' request.

6e(a).  Plaintiff's Motion to Remand thus turns on whether this federal remedy envelops plaintiff's removed state law claims.  But before it turns to that question, the court reviews several general rules governing removal of state law claims to federal court.

### A.      Removal of Federal Question Cases to Federal Court

Congress has granted federal district courts authority to hear certain civil actions brought originally in state court.  *See* 28 U.S.C. § 1441.  "Under the removal statute, 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant' to federal court."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting 28 U.S.C. § 1441(a)).

"One category of cases of which district courts have original jurisdiction is '[f]ederal question' cases:  cases 'arising under the Constitution, laws, or treaties of the United States.'"  *Id.* (quoting 28 U.S.C. § 1331).  "Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule."  *Id.* (citation and internal quotation marks omitted).  Under this rule, "a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based on federal law."  *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (citations and internal quotation marks omitted).

Typically, a *federal defense* cannot supply the federal question required by the well-pleaded complaint rule, and thus cannot provide the basis for statutory federal question jurisdiction.  *Id.*; *see also Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).  So as "a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

"There is an exception, however, to the well-pleaded complaint rule.  '[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed."  *Davila*, 542 U.S. at 207 (quoting *Anderson*, 539 U.S. at 8); *see also Christensen v. BNSF Ry. Co.*, 242 F. Supp. 3d 1186, 1190 (D. Kan. 2017).

The court next explores the "complete preemption" doctrine and considers whether this exception to the well-pleaded complaint rule applies here.

**B.      The Doctrine of "Complete Preemption"**

"In *Anderson*, the Supreme Court held that a state claim may be removed to federal court in only two circumstances:  (1) 'when Congress expressly so provides'; or (2) 'when a federal statute wholly displaces the state-law cause of action through complete pre-emption.'"  *Devon Energy*, 693 F.3d at 1205 n.7 (quoting *Anderson*, 539 U.S. at 8).

Courts often point out that the preemption required to invoke the "complete preemption" doctrine is not merely the "ordinary preemption" that defendants sometimes invoke as a defense to a claim.  *See Devon Energy*, 693 F.3d at 1203 n.4 (citations omitted); *see also Christensen*, 242 F. Supp. 3d at 1190.  In contrast, "'complete preemption' refers to the replacement of a state cause of action with a federal one."  *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996).  It is "quite rare."  *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) (citation and internal quotation marks omitted); *see also Devon Energy*, 693 F.3d at 1205 (noting that "the Supreme Court has warned that complete preemption should not be lightly implied" (citation and internal quotation marks omitted)).

"'When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'"  *Dutcher*, 733 F.3d at 985 (quoting *Anderson*, 539 U.S. at 8); *see*

*also Davila*, 542 U.S. at 207–08.  Relatedly, where "a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23–24 (1983).

To determine whether a federal act completely preempts plaintiff's claims, the court must answer two questions affirmatively:  (1) Does "the federal regulation at issue preempt[ ] the state law relied on by the plaintiff[?]"; and (2) Did Congress intend to allow removal in the case at issue?  *Devon Energy*, 693 F.3d at 1205–06 (citing *Schmeling*, 97 F.3d at 1342).  Our Circuit has instructed district courts to start with the second question—congressional intent.  *Id.* at 1206.  And in "providing further guidance concerning the requirements for complete preemption, the [Supreme] Court observed that 'the proper inquiry focuses on whether Congress intended the federal cause of action *to be exclusive* rather than on whether Congress intended that the cause of action be removable.'"  *Id.* at 1205 n.7 (quoting *Anderson*, 539 U.S. at 9 n.5 (emphasis added)) (noting that *Anderson*'s "formulation of the complete-preemption test ultimately may require [the Tenth Circuit] to reformulate the test [it] set out in *Schmeling*" but declining to do so in *Devon Energy* (citations omitted)).

Under either formulation of the complete preemption analysis, "the claims at issue must fall within the scope of the relevant federal statute for complete preemption to apply."  *Eaton v. Big Blue Healthcare, Inc.*, 480 F. Supp. 3d 1184, 1190, (D. Kan. Aug. 19, 2020) (citation omitted); *see also Anderson*, 539 U.S. at 7; *Franchise Tax Bd.*, 463 U.S. at 23–25.

Here, defendants assert that federal question jurisdiction exists via complete preemption, so "it is their burden to show that, first, the PREP Act applies" to plaintiff's claims.  *Eaton*, 480 F. Supp. 3d at 1192; *see also Kokkonen*, 511 U.S. at 377.

Next, the court turns to this preliminary question after a brief overview of the PREP Act.

## C.     Whether Plaintiff's Claims Fall Within a PREP Act Remedy

"In a nutshell, the PREP Act empowers the Secretary of the Department of Health and Human Services to deem an event a 'public health emergency' and then take action to utilize funds established by the Treasury to manage the emergency." *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20CV1198, 2020 WL 6140474, at *6 (W.D. Pa. Oct. 16, 2020) (quoting 42 U.S.C. § 247d(a)). Once the Secretary has issued such a declaration, the statute "provides sweeping immunity for certain claims against certain covered individuals[.]" *Eaton*, 480 F. Supp. 3d at 1190. The PREP Act's immunity provision establishes that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ." 42 U.S.C. § 247d-6d(a)(1).

In March 2020, then Secretary Alex Azar issued a PREP Act declaration for COVID-19.[3] On December 3, 2020, he issued a Fourth Amendment to the Declaration. 85 Fed. Reg. 79,190. And, on January 8, 2021, Health and Human Services General Counsel published Advisory Opinion 21-01 ("HHS Advisory Opinion 21-01") about the PREP Act.[4]

### 1.  The PREP Act Creates Federal Remedial Rights

"In order to determine whether complete preemption is applicable here, [the court] must first address whether federal law provides a private right of action to sue for violations . . . ."

---

[3]      *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020) ("Declaration").

[4]      Health and Human Services General Counsel published Advisory Opinion 21-02 on January 12, 2021. But, it's irrelevant to the court's analysis here. It merely discusses whether administering a COVID-19 vaccine "satisfies the PREP Act Authorizations' requirement that the vaccination be ordered and administered according to ACIP's COVID-19 vaccine recommendation(s)." *Id.* at 2 (internal quotation marks omitted).

*Dutcher*, 733 F.3d at 986.  The PREP Act creates two federal remedies.  *First*, the "PREP Act permits 'an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . .'"  *Eaton*, 480 F. Supp. 3d at 1191 (quoting 42 U.S.C. § 247d-6d(d)(1)).  *Second*, for "injuries not involving willful misconduct, the PREP Act establishes a 'Covered Countermeasure Process Fund,' which provides 'compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration.'"  *Id.* (quoting 42 U.S.C. § 247d-6e(a)).[5]

### 2.   The Scope of the PREP Act's Remedial Rights

#### a.   Generally

Our court has examined the PREP Act and the scope of its causes of action before.  *See, e.g.*, *Eaton*, 480 F. Supp. 3d at 1192.  *Eaton* explained:

> In sum, the PREP Act creates immunity for all claims of loss causally connected to the administration or use of covered countermeasures, which are certain drugs, biological products, or devices.  Exceptions to immunity exist for claims of willful misconduct but suit must be brought in the United States District Court for the District of Columbia.  All other claims for injuries "directly caused by the **administration or use of a covered countermeasure**" must be pursued through the Covered Countermeasure Process Fund.  State laws that differ or conflict regarding the administration or use of covered countermeasures are preempted.

*Id.* (emphasis added); *see also Sherod*, 2020 WL 6140474, at *6 ("adopt[ing] the succinct summary of the PREP Act as set forth by the United States District Court for the District of Kansas").  Here, the Petition alleges nothing about willful misconduct, so plaintiff's claims cannot fall within the scope of the act's first remedy.  The court thus focuses its analysis,

---

[5]       The statute's use of "proximately caused" for one remedy and "directly caused" for another is notable.  *See* Antonin Scalia & Bryan A. Garner, Reading Law:  The Interpretation of Legal Texts, § 25 (2012) ("[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea."); *see also* Caleb Nelson, *Statutory Interpretation*, 88 (2014).  But deciding the Motion to Remand does not require the court to determine whether the statutory text uses the terms "directly caused" and "proximately caused" synonymously.

following, on the second federal remedy—claims under the Covered Countermeasure Process Fund.[6]

### b.   Covered Countermeasure Process Fund Claims Under § 247d-6e(a)

"Upon the issuance by the Secretary of a declaration under section 247d-6d(b) . . . there is hereby established in the Treasury an emergency fund . . . for purposes of providing timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration[.]"  42 U.S.C. § 247d-6e(a).  If plaintiff's allegations in this case do not assert "injuries directly caused by the administration or use of a covered countermeasure[,]" then the claim falls outside the scope of the federal remedy.  *Id.*  And if the claim falls outside the scope of the PREP Act's federal remedy, then the PREP Act cannot serve as the basis for complete preemption of plaintiff's state law claims.  *See Franchise Tax Bd.*, 463 U.S. at 23–25.

"A 'covered countermeasure' under the PREP Act is, simplified, a drug, biological product, or device that is a 'qualified pandemic or epidemic product' or a 'security countermeasure,' or is authorized for emergency use under the Federal Food, Drug, and Cosmetic Act."  *Eaton*, 480 F. Supp. 3d at 1191 (citing 42 U.S.C. § 247d-6d(i)(1)).  A covered countermeasure "also includes a 'respiratory protective device that is approved by the National Institute for Occupational Safety and Health.'"  *Id.* (quoting 42 U.S.C. § 247d-6d(i)(1)).  Former Secretary Azar's Declaration under the PREP Act further defines "covered countermeasures" as:

---

[6]     The court makes no determination about whether an administrative remedy creates a sufficient federal cause of action because plaintiff's claims do not fall within the PREP Act.  *See infra* Section III.C.6; *see also Lopez v. Life Care Ctrs. of Am., Inc.*, No. CV 20-0958 JCH/LF, 2021 WL 1121034, at *8 (D.N.M. Mar. 24, 2021) (deferring the issue of whether Covered Countermeasures Fund creates a sufficient exclusive cause of action because defendants failed to show plaintiffs' claims fell within the PREP Act).

(a) Any antiviral, any drug, any biologic, any diagnostic, any other device, any respiratory protective device, or any vaccine manufactured, used, designed, developed, modified, licensed, or procured:

    i. To diagnose, mitigate, prevent, treat, or cure COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or

    ii. to limit the harm that COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, might otherwise cause;

(b) a product manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by a product described in paragraph (a) above;

(c) a product or technology intended to enhance the use or effect of a product described in paragraph (a) or (b) above; or

(d) any device used in the administration of any such product, and all components and constituent materials of any such product.

85 Fed. Reg. at 79,196–97.

The PREP Act does not define "administration or use."  But former Secretary Azar's Declaration explains that "Administration of the Covered Countermeasure means [1] physical provision of the countermeasures to recipients, or [2] activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for the purpose of distributing and dispensing countermeasures."  85 Fed. Reg. at 79,197.  The Fourth Amendment interprets "Administration of Covered Countermeasures" to include "not administering a Covered Countermeasure to one individual in order to administer it to another individual[.]"  *Id.*

To determine the scope of the statute's compensation fund remedy, the court now reviews cases from our court and others that have construed this provision in the PREP Act.

### 3.  Relevant Cases from Our Court and Others

Plaintiff's Motion to Remand raises questions similar to those that several courts, including our own, have confronted recently. Before former Secretary Azar issued the Fourth Amendment to the PREP Act Declaration, our court held that the PREP Act was "inapplicable" to plaintiffs' negligence claims where plaintiff's "case is premised on inaction" and there was "no clear allegation that any injury or claim of loss was caused by the administration or use of any covered countermeasure, let alone that the loss arose out of, related to, or resulted from the same." *Eaton*, 480 F. Supp. 3d at 1186 n.1, 1194. *Eaton* reasoned that "the PREP Act addresses the administration or use of covered countermeasures . . . . [and] [t]here is simply no room to read it as equally applicable to the <u>non</u>-administration or <u>non</u>-use of covered countermeasures." *Id.* at 1195.[7]

Several other federal district courts have reached similar conclusions. *See Sherod*, 2020 WL 6140474, at *6–7 (W.D. Pa.) (holding that because Complaint alleges that defendant "failed to provide decedent with any protection/countermeasures, Plaintiff's claims fall outside the purview of the PREP Act which purports to provide immunity to facilities like [defendant] when a claim is brought against them for the countermeasures the facility actually utilized"); *Gunter v. CCRC OPCO-Freedom Square, LLC*, No. 8:20-cv-1546-T-36TGW, 2020 WL 8461513, at *3–4 (M.D. Fla. Oct. 29, 2020) (granting plaintiff's Motion to Remand where plaintiff's "claims do

---

[7] Judge Teeter decided ten other related cases besides *Eaton*. *See Fortune v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2318-HLT-JPO, 2020 WL 4815097 (D. Kan. Aug. 19, 2020); *Rodina v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2319-HLT-JPO, 2020 WL 4815102 (D. Kan. Aug. 19, 2020); *Lutz v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2316-HLT-JPO, 2020 WL 4815100 (D. Kan. Aug. 19, 2020); *Campbell v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2265-HLT-JPO, 2020 WL 4815082 (D. Kan. Aug. 19, 2020); *Eaton v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2291-HLT-JPO, 2020 WL 4815085 (D. Kan. Aug. 19, 2020); *Long v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2263-HLT-JPO, 2020 WL 4815079 (D. Kan. Aug. 19, 2020); *Jackson v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2259-HLT-JPO, 2020 WL 4815099 (D. Kan. Aug. 19, 2020); *Brown v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2261-HLT-JPO, 2020 WL 4815078 (D. Kan. Aug. 19, 2020); *Block v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2262-HLT-JPO, 2020 WL 4815076 (D. Kan. Aug. 19, 2020); *Baskin v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2267-HLT-JPO, 2020 WL 4815074 (D. Kan. Aug. 19, 2020); *Harris v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2266-HLT-JPO, 2020 WL 4815098 (D. Kan. Aug. 19, 2020).

12

not fall within the scope of the PREP Act, and therefore do not provide a basis for this Court's jurisdiction" because, among other reasons, plaintiff "does not allege that any manufacture, testing, development, distribution, administration, or use of countermeasure caused or contributed to the injuries and death of" decedent); *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 531 (D.N.J. Aug. 12, 2020) (concluding malpractice claims relying on countermeasures *not* used "would not be preempted by the PREP Act, which is designed to protect those who employ countermeasures, not those who decline to employ them"); *Martin v. Serrano Post Acute LLC*, No. CV 20-5937 DSF (SKX), 2020 WL 5422949, at *1–2 (C.D. Cal. Sept. 10, 2020) (rejecting defendants' argument that PREP Act completely preempted plaintiffs' state law claims alleging that defendants "failed to staff the nursing facility they owned and operated adequately, failed to take proper precautions to prevent the spread of COVID-19 in the facility, and failed to react properly to the infections that became present in the facility" and that these "failings . . . caused the death of the decedent"); *see also Jackie Saldana v. Glenhaven Healthcare LLC*, No. CV205631FMOMAAX, 2020 WL 6713995, at *2 (C.D. Cal. Oct. 14, 2020) (rejecting argument that PREP Act completely preempted plaintiffs' state law claims alleging that defendants "improperly and inadequately protected [nursing home resident] from the COVID-19 virus during the coronavirus pandemic").

And several state court decisions fall into place in the same line.  *See, e.g.*, *Casabianca v. Mount Sinai Med. Ctr*, No. 112790/10, 2014 WL 10413521, at *4 (N.Y. Sup. Ct. Dec. 2, 2014) (holding PREP Act did not pre-empt plaintiff's malpractice claim for failing to administer a vaccine because, under PREP Act, "the injury must be one . . . occur[ing] from the administration or use of the vaccine, no matter what circumstances led to that use.  Nothing is spoken of regarding a decision not to use the vaccine or of a failure to use it, whenever that

decision was made or that failure may have occurred"); *cf. Parker v. St. Lawrence Cnty. Pub. Health Dep't*, 102 A.D.3d 140, 141 (N.Y. App. Div. 2012) (concluding that PREP Act provided defendant a pre-emption defense to plaintiff's claim where it was undisputed that vaccine was administered and the loss claimed—administration of a vaccine without consent—was "caused by, [arose] out of, relat[ed] to, or result[ed] from the administration to . . . an individual of a covered countermeasure").

The court agrees with Judge Teeter's observation in Eaton: "Read together, *Maglioli*, *Casabianca*, and *Parker* support the conclusion that the PREP Act applies to action, not inaction." *Eaton*, 480 F. Supp. 3d at 1193. This case reaches the same conclusion.

### 4. Whether "Inaction Claims" Can Fall Within the PREP Act's Scope

On December 3, 2020, then HHS Secretary amended, among other provisions, Section IX of the Declaration to note, "[w]here there are limited Covered Countermeasures, *not* administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute 'relating to . . . the administration to . . . an individual' under 42 U.S.C. 247d–6d." 85 Fed. Reg. at 79,197. The Amended Declaration explains that "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections." *Id.* The Amended Declaration illustrates that, in certain circumstances, "the failure to administer" the Covered Countermeasure to one person "'relat[es] to . . . the administration to'" another. *Id.* (quoting 42 U.S.C. § 247d-6d).[8]

---

[8] Defendants direct the court to HHS Advisory Opinion 21-01 (Doc. 17-9) which the agency's General Counsel published on January 8, 2021. Advisory Opinion 21-01 reiterates much of the Secretary's guidance about non-use or failure to administer claims. *See* Doc. 17-1.

So, based on the recent amendment, an "inaction claim" is not necessarily beyond the scope of the PREP Act. The statute's immunity provision could cover certain claims of inaction or a claim alleging certain failures to administer countermeasures. But, this possibility does not upend the distinction between action and inaction that our court and others have drawn. The Declaration suggests that alleged inaction or failure to administer countermeasures falls within the federal grant of immunity when paired closely with an act administering a countermeasure to another.

The former Secretary also noted that "*not* administering a Covered Countermeasure" can constitute "'relating to . . . the administration to . . . an individual'" under 42 U.S.C. § 247d-6d where (1) "there are limited Covered Countermeasures," and (2) the alleged failure to administer a countermeasure to one individual is "in order to administer it to another individual[.]" *Id.* (quoting 42 U.S.C. § 247d-6d (emphasis added)); *see also* Doc. 17-9 (Advisory Op. 21-01). The former Secretary's illustration reinforces the need for these two conditions for "inaction claims" to fall within the statute's reach. *See* 85 Fed. Reg. at 79,197. For example, an inaction claim resulting from *not* administering a covered countermeasure may occur where person-A "was able to receive the [single covered countermeasure] *only because* it was not administered to" person-B. *Id.* (emphasis added).

As the court noted before, the above example reflects the difference between (1) robbing Peter *and* paying Paul, versus (2) robbing Peter *to* pay Paul—or more precisely: not paying Peter in order to pay Paul. HHS Advisory Opinion 21-01 also emphasizes this distinction: "The language of the PREP Act itself supports a distinction between allocation which results in non-use by some individuals, on the one hand, and nonfeasance, on the other hand, that also results in non-use." Doc. 17-9 at 4.

So, the court is fully mindful of former Secretary Azar's understanding that PREP Act immunity can cover certain inaction claims.  But this case's motion requires the court to determine the scope of PREP Act's remedy—not its grant of immunity.  The court nonetheless concludes that the Declaration's emphasis on causation in the context of non-administration claims reinforces our court's causation analysis in related PREP Act cases.  Specifically, our court has rejected the notion "that a facility using covered countermeasures <u>somewhere</u> in the facility is sufficient to invoke the PREP Act as to all claims that arise in that facility" because the Act "still requires a *causal connection* between the injury and the use or administration of covered countermeasures[.]"  *See Eaton*, 480 F. Supp. 3d at 1194 (second emphasis added).  Consistent with *Eaton* and its sibling cases, the Declaration's two conditions for PREP Act immunity in "inaction claims," *i.e.*, claims alleging liability for *not* administering a covered countermeasure, require a close causal relationship between the injurious inaction and the corresponding administration that caused it.

### 5.  Relevant Cases Discussing "Inaction Claims"

On January 29, 2021, this court decided three similar cases where plaintiffs alleged that defendant nursing homes had failed to act to prevent the spread of COVID-19 in their facilities, resulting in residents' injuries or death.  *See Anson v. HCP Prairie Vill. KS OPCO LLC*, No. 20-2346-DDC, 2021 WL 308156, at *10 (D. Kan. Jan. 29, 2021); *see also Goldblatt v. HCP Prairie Vill. KS OPCO LLC*, No. 20-2489-DDC-KGG, 2021 WL 308158, at *10–11 (D. Kan. Jan. 29, 2021) (same); *Grohmann v. HCP Prairie Vill. KS OPCO LLC*, No. 20-2304-DDC-JPO, 2021 WL 308550, at *10–11 (D. Kan. Jan. 29, 2021) (same).  The plaintiffs in these three cases alleged "defendants failed to act in many different ways" to prevent the spread of COVID-19 and the plaintiffs there alleged "those failures to act directly and proximately caused the alleged

harms." *See Anson*, 2021 WL 308156, at *9; *Goldblatt*, 2021 WL 308158, at *9; *Grohmann*, 2021 WL 308550, at *9.  The court reasoned that the "Declaration's two conditions for PREP Act immunity in 'inaction claims' for *not* administering a covered countermeasure require a close causal relationship between the injurious inaction and the corresponding administration or use that caused it."  *Anson*, 2021 WL 308156, at *9; *Goldblatt*, 2021 WL 308158, at *9; *Grohmann*, 2021 WL 308550, at *10.  The court concluded that plaintiffs' allegations in those three cases did not trigger the PREP Act because plaintiffs hadn't alleged their injuries were caused by "inaction—non-administration or non-use—*caused by* or *in order to* administer covered countermeasures elsewhere."  *Anson*, 2021 WL 308156, at *10; *Goldblatt*, 2021 WL 308158, at *10; *Grohmann*, 2021 WL 308550, at *11.

After the court's January 29 orders in the three cases—*Anson*, *Goldblatt*, and *Grohmann*—several other courts have addressed the issue and likewise concluded that general negligence claims fall outside the PREP Act.  In *McCalebb*, plaintiffs alleged defendant "did not comply with CDC guidelines and otherwise failed to use appropriate precautions to protect the Facility's residents from the transmission of the virus."  *Est. of Voncile R. McCalebb v. AG Lynwood, LLC*, No. 2:20-CV-09746-SB-PVC, 2021 WL 911951, at *5 (C.D. Cal. Mar. 1, 2021). The complaint described "overall inattention rather than conscious decision-making about covered countermeasures while delivering care."  *Id.*  The Central District of California remanded its case, reasoning that "cases of general neglect fall outside the protection of the PREP Act."  *Id.*  "Thus, even if the PREP Act conferred federal jurisdiction, it would not appear to do so here."  *Id.*

Also, Judge Teeter revisited the jurisdictional question after the January 29 orders in *Saunders*.  There, she held plaintiff's state law claims for negligence and wrongful death did not

fall within "the PREP Act because the PREP Act was designed to address claims arising from the administration or use of covered countermeasures, rather than claims alleging a failure to act in the face of the threat of COVID-19 altogether." *Saunders v. Big Blue Healthcare, Inc*., No. 2:20-CV-02608-HLT-TJJ, 2021 WL 764567, at *8 (D. Kan. Feb. 26, 2021); *see also Robertson v. Big Blue Healthcare, Inc.*, No. 2:20-cv-02561-HLT-TJJ, 2021 WL 764566, at *8 (D. Kan. Feb. 26, 2021) (same). The complaint in that case didn't allege or provide facts "suggesting that Plaintiff (or her relative) suffered any loss caused by the 'prioritization or purposeful allocation' of a countermeasure." *Saunders*, 2021 WL 764567, at *9. And, there were "no allegations" that "the loss was caused by the non-use or non-administration of covered countermeasures linked to the use or administration of that countermeasure to another person instead." *Id.*

Several other courts have applied similar reasoning and concluded that the PREP Act does not apply to inaction claims unless they allege some causal connection between plaintiff's injuries and the administration of a covered countermeasure. *See Lopez v. Life Care Ctrs. of Am., Inc*., No. CV 20-0958 JCH/LF, 2021 WL 1121034, at *8 (D.N.M. Mar. 24, 2021) (PREP Act did not apply to plaintiffs' claims because it "requires connection to the use or administration of a covered countermeasure" and plaintiffs' did not allege their injuries resulted from "the implementation of a CDC-approved prioritization plan"); *Smith v. Colonial Care Ctr., Inc. et al.*, No. 2:21-CV-00494-RGK-PD, 2021 WL 1087284, at *4 (C.D. Cal. Mar. 19, 2021) (plaintiffs' claims did not fall within PREP Act because plaintiffs did "not allege any injury related to the use (or non-use) or administration of any drug, device, or product" and plaintiffs did allege "Decedent's injuries were caused by Defendant's failure to 'implement an effective policy for isolating proven or suspected carriers of the coronavirus, and protecting its residents from exposure to COVID-19.'"); *Lyons v. Cucumber Holdings, LLC*, No. CV2010571JFWJPRX,

2021 WL 364640, at *5 (C.D. Cal. Feb. 3, 2021) (citing *Eaton*, 480 F. Supp. 3d at 1194) (finding PREP Act inapplicable because "even assuming that Plaintiff's allegations could be construed as alleging the administration of covered countermeasures, she does not allege that Decedent's death resulted from Defendants' decisions to administer those covered countermeasures to other individuals"); *Dupervil v. All. Health Operations, LCC*, No. 20CV4042PKCPK, ___ F. Supp. 3d ___, 2021 WL 355137, at *12 (E.D.N.Y. Feb. 2, 2021) (on appeal) (holding PREP Act did not completely preempt state law claims when "crux of Plaintiff's claims is that his father died because Defendants failed to take certain steps such as separating residents, enforcing social distancing among residents and staff, timely restricting visitors, cancelling group and communal activities, ensuring adequate staffing levels, enforcing mask-wearing, and screening people entering the facility for symptoms of COVID-19").

Defendants respond to this line of authority by directing the court to *Garcia v. Welltower OpCo Group LLC*, No. SACV 20-02250JVS(KESx), 2021 WL 492581 (C.D. Cal. Feb. 10, 2021).  *See* Doc. 21.  As Judge Teeter noted in *Robertson*, *Garcia* "appears to be the only federal court decision declining to remand this similar line of cases back to state court."  2021 WL 764566, at *10.  *Garcia* views the PREP Act as a complete preemption statute and concluded that it preempted plaintiff's state law claims for elder abuse and neglect, wrongful death, and intentional infliction of emotional distress and denied plaintiff's motion to remand.  2021 WL 492581, at *1.  Relying on HHS Advisory Opinion 21-01, *Garcia* held, "when a party attempts to comply with federal guidelines—in this case, concerning the COVID-19 pandemic—the PREP Act would provide complete preemption."  *Id.* at *6.  And, *Garcia* found plaintiff's *complaint* disclosed "possible unsuccessful attempts at compliance with federal or state guidelines[.]"  *Id.* at *9.  *Garcia* ruled that plaintiff did not allege "instances of nonfeasance . . .

but rather instances where [defendants] acted in ways to 'limit the harm such a pandemic or epidemic might otherwise cause.'" *Id.* at (quoting 85 Fed. Reg. at 35,101). *Garcia* "found that the plaintiff's allegations include the 'use and misuse of PPE' and detailed 'infection control measures and procedures including symptom checking, staff monitoring and screening, and limiting visitation.'" *Robertson*, 2021 WL 764566, at *10 (quoting *Garcia*, 2021 WL 492581, at *8). Even if *Garcia* is correctly decided, it doesn't apply to plaintiff's claims here. Unlike *Garcia,* plaintiff here does not allege any facts asserting that defendant tried to limit the spread of COVID-19 or implemented any covered countermeasures.

Defendants also direct the court to two more supplemental authorities. *See* Doc. 19 (Statement of Interest), Doc. 20 (Fifth Amendment to PREP Act Declaration). Neither alter the court's analysis. The former—the Statement of Interest filed by the United States in *Bolton v. Gallatin Center for Rehabilitation & Healing, LLC*, No. 3:30-cv-00683 (M.D. Tenn. Jan. 19, 2021)—took "no position as to whether the [PREP] Act applies to any particular claim alleged in Plaintiff's Complaint" in the Tennessee case. Doc. 19-1 at 1. And, it provided no analysis or argument about the scope of the PREP Act's remedial remedy or what constitutes administration or use of a covered countermeasure. *See id.* So, it does not alter this court's analysis whether inaction claims fall within the PREP Act. The latter—the Fifth Amendment to the PREP Act— does not change the definition of "administration or use" or "covered countermeasure." *See* Doc. 20-1. It also does not alter the court's analysis either.

### 6.  Whether Plaintiff's Claims Here Fall Within the PREP Act's Cause of Action

Plaintiff's Petition alleges that defendants failed to act in many different ways, s*ee* Doc. 1-1 at 3–4 (Pet.), and she alleges that those failures to act caused the alleged harms. *See id.* at 5 (Pet. ¶¶ 19, 22). As in *Anson*, plaintiff here alleges that defendants failed to take various

preventive measures to stop entry, spread, and consequences of COVID-19 within the facility where decedent lived and that defendants' failure to take those precautions led decedent to contract, develop, and die of COVID-19. *See id.* at 3–4 (Pet.); *see also Anson*, 2021 WL 308156, at *1–2.

Defendants do their best to contort plaintiff's allegations of inaction into action, arguing that plaintiff "in fact, allege[s] the *non-use* or *ineffective* use or administration of such countermeasures." Doc. 17 at 15. But plaintiff is the master of the complaint and altering her allegations to suit defendants' arguments ignores that governing principle. *See Eaton*, 480 F. Supp. 3d at 1193 n.12 (emphasizing that "the complaint is what governs at this stage"). A removing defendant lacks the license to rewrite plaintiff's state-court claims and "justify removal on the basis of facts not alleged in the complaint." *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 396–97 (1987); *see also Eaton*, 480 F. Supp. 3d at 1193–94.

Defendants frame plaintiff's allegations as ones critiquing Riverbend's implementation of covered countermeasures. *See* Doc. 17 at 15.[9] Defendants pull apart plaintiff's complaint to create action claims, ignoring the context of plaintiff's allegations. *See id.* For example, defendants assert plaintiff's "allegations clearly involve allegations of affirmative action, or at least purportedly ineffective or negligent actions, to combat and prevent the spread of COVID-19." Doc. 17 at 15. But these contortions stretch the allegations well beyond all measure of reasonable flexibility. To be certain, the Petition refers to "personal protective equipment" (PPE), *see* Doc. 1-1 at 4 (Pet. ¶ 17(l)), and COVID-19 testing, *see* Doc. 1-1 at 3 (Pet. ¶ 11–13).

---

[9]  *Compare* Doc. 1-1 at 3–4 (Pet. ¶¶ 17(a)–(b)) (alleging defendants breached duty "By failing to consistently and adequately supervise, monitor and /or treat Ida Rose Dockery" and "failing to hire, train and supervise appropriate, qualified personnel to monitor, supervise and/or treat Ida Rose Dockery") *with* Doc. 17 at 15 (Def. Response) ("Plaintiffs allege Defendants did not adequately supervise and train staff to prevent the spread of COVID-19 in the facility. (Pet ¶¶ 17(a), 17(b))").

But one begins to hear ligaments popping when defendants assert that "a plain reading of the Petition reveals that Plaintiffs do, in fact, allege the *non-use* or *ineffective* use or administration of such countermeasures." Doc. 17 at 15; *see also* Doc. 17 at 22 (asserting that "it is clear that the Petition expressly implicates the use of *at least three* covered countermeasures"). Essentially, defendants argue that if defendants used *any* countermeasure inside the facility then the PREP Act applies because plaintiff is really alleging claims about defendants' "failure to have, implement, and/or execute an effective infection control program, which falls within the definition of 'administration' and 'covered countermeasure.'" *See* Doc. 17 at 21. So, defendants argue, even where plaintiff alleges inaction claims, plaintiff *really* is asserting action claims covered by the PREP Act. Our court squarely has refused to read allegations in this fashion and, instead, concluded that inaction claims require "a causal connection between the injury and the use or administration of covered countermeasures[.]" *See Robertson*, 2021 WL 764566, at *10; *see also Jackson v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2259-HLT-JPO, 2020 WL 4815099, at *7 (D. Kan. Aug. 19, 2020) (rejecting argument "that a facility using covered countermeasures <u>somewhere</u> in the facility is sufficient to invoke the PREP Act as to all claims that arise in that facility").

In other places, defendants simply revise the Petition hoping to conjure the various elements of a PREP Act claim. *See* Doc. 17 at 15. Defendants insert adverbs qualifying plaintiff's allegations and thus creating entirely different ones.[10] Defendants argue plaintiff

---

[10]     *Compare* Doc. 1-1 at 3–4 (Pet. ¶ 17(j), 17(m)) (alleging defendants breached duty to decedent "By failing to implement and/or follow proper infection control protocols and measures" and "By failing to separate and/or quarantine and/or isolate persons with signs and symptoms of COVID-19") *with* Doc. 17 at 15 (Def. Response) (asserting "Plaintiffs allege Defendants failed to *sufficiently* manage or control the presence of COVID-19 in the facility. (Pet. ¶¶ 17(j), 17(m))" (emphasis added)).

         *Compare* Doc. 1-1 at 4 (Pet. ¶ 17(l)) (alleging defendants breached their duty to decedent "By failing to provide proper personal protective equipment to staff at the facility") *with* Doc. 17 at 15 (Def.

*actually* alleges defendants' administration or use of covered countermeasures caused decedent's death. But this approach to the task doesn't employ the proper method for determining whether a case belongs in federal court. *See Eaton*, 480 F. Supp. 3d at 1193–94.

But even if the Petition had alleged conduct that qualifying as "administration or use of a covered countermeasure" within the meaning of the PREP Act—which it doesn't—the statute "still requires a causal connection between the injury and the use or administration of covered countermeasures[.]" *See Eaton*, F. Supp. 3d at 1194 & n.13. Nothing in the Petition "suggest[s] that the decedent's death was *causally connected* to the administration or use of any drug, biological product, or device (i.e. a covered countermeasure[ ])." *Id.* at 1192 (emphasis added). As in *Eaton*, the claims here are "precisely the opposite: [they allege] that inaction rather than action caused the death." *Id.*; *see also Sherod*, 2020 WL 6140474, at *7 (holding that plaintiff's "allegations do not fall within the purview of the PREP Act" where plaintiff's "negligence, misrepresentation, wrongful death and survivor claims are not causally connected to [the facility's] use of covered countermeasures" because plaintiff "alleges that [the facility's] *failure to utilize* countermeasures caused the death of the decedent" (second emphasis added)).

As explained above, in theory, certain inaction claims could trigger the PREP Act. But here, plaintiff alleges neither (1) limited covered countermeasures nor (2) a failure to administer those countermeasures to decedent "in order to administer [them] to another" individual. 85 Fed. Reg. at 79,197. And while defendants' joint Response characterizes these actions in such terms,[11] it's the allegations in the Petition that control the preemption analysis. *See Caterpillar*,

---

Response) ("Plaintiffs allege Defendants did not provide *adequate* supplies of PPE to facility staff (Pet. ¶17(l))" (emphasis added)).

[11]   *See, e.g.*, Doc. 17 at 24 ("Defendants' alleged decisions regarding allocation, use, and administration of PPE qualify as 'administering a covered countermeasure' and trigger PREP Act immunity and jurisdiction.").

482 U.S. at 396–96 (holding defendant cannot "create the prerequisites to removal by ignoring the set of facts . . . presented by" the complaint or by "arguing that there are different facts [plaintiffs] might have alleged that would have constituted a federal claim").  And the Petition alleges nothing about "[p]rioritization or purposeful allocation of a Covered Countermeasure[.]" 85 Fed. Reg. at 79,197.  Even if one construes one of plaintiff's allegations to allege the administration of a covered countermeasure, she never alleges a direct causal connection between (1) decedent's injuries and (2) defendants' decisions to administer to *another person* the covered countermeasures that defendants claim the Petition refers to—PPE, diagnostic testing, an infection control program, or actions under Kan. Admin. Regs. § 26-41-207.  *See* Doc. 17 at 22–24.  This omission keeps the state law claims here outside the scope of the PREP Act's remedial right.  *See Saunders*, 2021 WL 764567, at *8–9 (analyzing similar allegations against the same defendants and finding that the state law claims did not fall within the scope of the PREP Act because plaintiff does not allege "the loss was caused by the non-use or non-administration of covered countermeasures <u>linked</u> to the use or administration of that countermeasure to another person instead"); *Robertson*, 2021 WL 764566, at *9 (same).

In sum, plaintiff's allegations assert none of the qualifying inactions described by the PREP Act Declaration.  *See* 85 Fed. Reg. at 79,197.  Plaintiff does not allege inaction—non-administration or non-use—*caused by* or *in order to* administer covered countermeasures elsewhere.  So, while former Secretary Azar reads the PREP Act's immunity to cover a species of "inaction" claims, that species doesn't inhabit this case.

The Petition offers "no clear allegation that any injury or claim of loss was caused by the administration or use of any covered countermeasure, let alone that the loss arose out of, related to, or resulted from the same." *Eaton*, 480 F. Supp. 3d at 1194.  Perhaps some state law action

coming within the scope of the PREP Act's remedies "would be removable to federal district court, even if an otherwise adequate state cause of action were pleaded without reference to federal law[,]" but it "does not follow" that any of plaintiff's claims here fall within the scope of one of the PREP Act's causes of action. *Franchise Tax Bd.*, 463 U.S. at 24–25. And none do.

Congress has not completely preempted any of this plaintiff's state law claims. Because that exception to the "well-pleaded complaint" rule does not apply here, the court cannot conclude that plaintiff brings a "civil action[ ] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.[12] Thus, § 1331 cannot provide a statutory basis for the court to exercise "original jurisdiction" over the action. And since Congress has provided the court with no source of "original jurisdiction" over this action, removal under 28 U.S.C. § 1441(a) was improper.

### 7. Defendants' Counterclaim for Declaratory Relief (Doc. 6)

Plaintiff's responsive filings for the Motion to Dismiss and Counterclaim were stayed pending the court's ruling on the Motion to Remand. Doc. 15. The court also remands

---

[12]    To the extent that defendants assert that an embedded federal question lies in plaintiff's state law claims, *see* Doc. 17 at 6–7 (discussing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)), the court rejects that argument as well.

    For reasons explained in the court's analysis of the complete preemption doctrine, the court rejects defendants' assertion that plaintiff's allegations "are federal claims and belong in the federal court system." Doc. 17 at 9. Plaintiff's claims here do not necessarily raise a federal issue. *See Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947–48 (10th Cir. 2014) (discussing the "narrow boundaries of the substantial question category" of statutory "arising under" jurisdiction and holding that plaintiff's "federal issues are merely federal defenses, which" fail to provide "a sufficient basis from which to conclude that the questions are 'necessarily raised[ ]'" under *Gunn v. Minton*, 568 U.S. 251, 258 (2013) and "do not give rise to federal question jurisdiction under 28 U.S.C. § 1331"); *see also Martin*, 2020 WL 5422949, at *3 (rejecting defendants' embedded federal question theory of statutory "arising under" jurisdiction where defendants based that assertion on "basically the same reasons that [defendants'] think there is complete preemption" via the PREP Act because "the raised federal issue is [d]efendants' *defense*, not the actual claims made by [p]laintiffs" (emphasis added)); *Dupervil*, 2021 WL 355137, at *14 (holding no embedded federal question when "the PREP Act, a statute affording immunity, is not an essential element of any of Plaintiff's claims").

defendants' Counterclaim for a declaratory judgment (Doc. 6). The Counterclaim may not remain in this court, and so, the court remands it to state court as well.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also Lazorko v. Pa. Hosp.*, 237 F.3d 242, 250 (3d Cir. 2000), *cert. denied*, 533 U.S. 930 (2001) ("When the underlying federal subject matter jurisdiction upon which to remove a case from state court does not exist, the entire case must be remanded." (citing 28 U.S.C. § 1447(c))); *RMP Consulting Grp., Inc. v. Datronic Rental Corp.*, No. 98-5062, 189 F.3d 478, 1999 WL 617690, at *3–4 (10th Cir. Aug. 16, 1999) (unpublished table opinion) (discussing § 1447(c)).

But "the procedural posture of this case requires [the court] to specify the nature of 'the case' to be remanded." *RMP*, 1999 WL 617690, at *3. This process requires the court to sort out whether "the case" includes defendants' Counterclaim. Our Circuit has held that a defendant's counterclaim "properly forms part of the case" for purposes of § 1447(c) "and should be remanded as such" where "it appears from the record that the counterclaim was filed as of right, without any order by the district court approving it." *Id.* In contrast, pleadings filed by leave granted by a federal court Order that the court entered without subject matter jurisdiction do not "'form part of the case to be remanded.'" *See Calton v. JVM Sovereign Apartments, LLC*, No. 17-2739-DDC-JPO, 2018 WL 3708167, at *3 (D. Kan. Aug. 3, 2018) (quoting *RMP*, 1999 WL 617690, at *4).

Here, it appears from the record that defendants' Counterclaim was filed as of right, without any Order approving its filing. The Counterclaim thus properly forms part of "the case" under § 1447(c). *See Calton*, 2018 WL 3708167, at *2–3 (applying *RMP* and holding that defendant's original Third-Party Complaint filed as a matter of right was part of the case to

remand to state court, but that defendant's Amended Third-Party Complaint filed by leave of court was not part of the case remanded to state court); *see also Saunders*, 2021 WL 764567, at *12 n.19 (granting plaintiff's motion to remand the case and remanding counterclaim).  The court thus remands defendants' Counterclaim to state court as well.

## IV.    Conclusion

When it enacted the PREP Act, Congress created federal remedial rights.  But plaintiff's claims do not fall within the scope of those remedies.  So, this case is not an action where one of plaintiff's claims, "even if pleaded in terms of state law, is in reality based on federal law." *Anderson*, 539 U.S. at 8.  The doctrine of "complete preemption" does not apply to this plaintiff's claims and the case thus does not arise under federal law.  Since no other basis for subject matter jurisdiction presents itself, the court must remand the case (including defendant's Counterclaim) to state court.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Remand (Doc. 12) is granted.  The court remands this case to the District Court of Wyandotte County, Kansas.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 7) is dismissed because the court lacks subject matter jurisdiction to decide that motion.  This ruling does not affect defendants' rights, whatever they are, to present a similar motion once the state court proceedings resume.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Counterclaim for Declaratory Judgment (Doc. 6) is remanded because the court lacks subject matter jurisdiction over it.

**IT IS SO ORDERED.**

**Dated this 30th day of March, 2021, at Kansas City, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**